UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUABEYA KAPIAMBA,

          Petitioner,

                                     Case No. 1:07-cv-335
v.                                   Hon. Robert J. Jonker

ALBERTO GONZALEZ, et al.,

          Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner has filed a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241. For the reasons stated below, the petition should be denied.

### I.        Background

Petitioner is a native and citizen of the Democratic Republic of the Congo (DRC). *See* Board of Immigration Appeals (BIA) (Opinion, May 18, 2007) (docket no. 18-2). He was admitted to the United Sates as a non-immigrant exchange visitor in 2001 and granted asylum on October 2, 2003. *Id.* On January 19, 2006, petitioner was convicted of a felony, i.e., assault with intent to commit sexual penetration (M.C.L. § 750.520g(1)). *Id.*; Judgment of Sentence (docket no. 17-3). He was sentenced to 12 months' incarceration, with credit for 218 days, and 60 months probation. *Id.* He was taken into federal custody on April 18, 2006. Petition at ¶ 19.

Petitioner was charged with deportation pursuant to Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), for being convicted of an aggravated felony as defined in INA § 101(a)(43)(A), (F) and (U), 8 U.S.C. § 1101(a)(43)(A) ("murder, rape, or sexual abuse of a minor"), (F) ("a crime of violence . . . for which the term of imprisonment [is]

at least one year"), and (U) ("an attempt or conspiracy to commit an offense described in this paragraph").  An Immigration Judge (IJ) terminated petitioner's asylum status and ordered him removed to the DRC on November 27, 2006. IJ Order (Nov. 27, 2006) (docket no. 6-5).

On appeal, the BIA agreed with the IJ that petitioner was convicted of an aggravated felony crime of violence under 18 U.S.C. § 16(b), and that the record supported termination of his asylee status pursuant to 8 U.S.C. § 1101(a)(43)(F) (commission of a crime of violence).   BIA Opinion (May 18, 2007).  The BIA found that petitioner's conduct was predatory "due to the large number of e-mails he sent to the victim, their content, and other information."  *Id.*  In addition, the BIA agreed with the IJ that plaintiff "has not established that it is more likely than not that he will face torture as a repatriated asylum seeker in the DRC."  *Id.*   However, the BIA determined that petitioner should be given the opportunity to apply for adjustment of status under INA § 209, 8 U.S.C. § 1159, and remanded for further proceedings on that issue.  *Id.*[1]

On remand, the IJ conducted another hearing to address petitioner's application for an adjustment of status and denied the application on October 31, 2007.  *See* IJ Order (Oct. 31, 2007) (docket no. 37-2).  Petitioner appealed this decision to the BIA, which affirmed the IJ's

---

[1] The BIA's opinion reads in pertinent part as follows:

The respondent [Mr. Kapiamba] also challenges the fairness of his hearing because the Immigration Judge did not advise him that he was potentially eligible for adjustment of status and a waiver of inadmissibility under section 209 of the Act.  The regulations state that an Immigration Judge has a duty to inform an alien of his or her apparent eligibility to apply for potential forms of relief.  In this case, the respondent initially appears to have been eligible for section 209 adjustment with a waiver.  The Immigration Judge, however, did not mention this to the respondent and repeatedly told him that he was eligible only for a deferral of removal.  To remedy this situation, we will remand the record so that the Immigration Judge can initially address the respondent's application for adjustment of status under section 209 of the Act.  If the Immigration Judge decides to grant relief, she may reconsider her decision to terminate asylee status . . .

BIA Opinion (May 18, 2007) (internal citations and footnote omitted).

2

decision and dismissed the appeal on March 25, 2008.  *See* BIA Decision (March 25, 2008) (docket no. 52-2).  Petitioner moved for reconsideration and to reopen the proceedings on the ground of ineffective assistance of his former counsel.  *See* BIA Decision (May 21, 2008) (docket no. 52-3). The BIA denied both motions.  *Id.*  Then, Mr. Kapiamba appealed the BIA's decision to the Sixth Circuit Court of Appeals, filing a petition for judicial review of the BIA's final order (the "appellate petition for judicial review").  *See Kapiamba v. Mukasey*, No. 08-3499 (6th Cir.) (Order, Aug. 6, 2008).  The Sixth Circuit denied petitioner's motion to stay his removal pending the outcome of the appellate petition for judicial review, finding that he had "little likelihood of success on review." *Id.*  The Sixth Circuit recently denied reconsideration of that order.  *Id.,* (Order, Oct. 17, 2008). Petitioner's appellate petition for judicial review remains pending before the Sixth Circuit.

The present habeas petition contains four counts.  In Count I, petitioner contends that his detention violates INA § 236(c), 8 U.S.C. § 1226(c), because the government commenced removal proceedings without a prior determination to revoke his asylum status.  In Count II, petitioner contends that his continued detention violates "his right to substantive due process through a deprivation of the core liberty interest in freedom from bodily restraint."  In Count III, petitioner contends that his due process rights have been violated because he has been denied the opportunity to show evidence that he is still eligible for the grant of asylum despite his criminal conviction.  In Count IV, petitioner contends that ICE agents violated his Fourth Amendment rights against wrongful arrest and unlawful seizure when they arrested him after his release from jail, without terminating his asylee status.  On January 17, 2007, the district court in the Eastern District of Michigan stayed petitioner's removal or deportation "until further order of the Court."  *See* docket

no. 2.  After reviewing the government's response, the Eastern District exercised its discretion to transfer the habeas action to this district.  *See* docket no. 9.

## II.      Discussion

Petitioner's habeas action seeks two types of relief.  First, he contests the government's basis for his removal.  Second, he seeks release from detention pending his removal from the United States.

### A.      Claims contesting the BIA's order of removal

As an initial matter, petitioner's Counts I, III and IV challenge the validity of the order of removal.  These challenges are not properly before the court.  Under the amended provisions of 8 U.S.C. § 1252(a)(5) (the REAL ID Act of 2005), the "sole and exclusive means for judicial review of an order of removal" is a petition for review to the appellate court.  *See Tilley v. Chertoff*, 144 Fed. Appx. 536, 538 (6th Cir. 2005).  This court lacks jurisdiction to consider the petition insofar as it challenges the order of removal.  *Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006). Accordingly, petitioner's Counts I, III and IV should be denied.

### B.      Release from detention

#### 1.      Pre-removal detention

The remaining and sole claim properly before the court is petitioner's Count II, which challenges the legality of his incarceration.  When Mr. Kapiamba filed the petition, he was being detained as a criminal alien under the mandatory pre-removal detention statute, 8 U.S.C. § 1226(c). At that time, petitioner contended that his nine-month pre-removal detention was unreasonable. Petitioner relied on *Ly v. Hansen*, 351 F.3d 263, 271 (6th Cir. 2003).  In *Ly*, the court held that the government, "may detain *prima facie* removable criminal aliens, without bond, for a reasonable

4

period of time required to initiate and conclude removal proceedings promptly." *Ly*, 351 F.3d at 273.  The court further held that the reasonableness of the length of this detention is subject to review by federal courts in habeas proceedings, and that  "[w]hen actual removal is not reasonably foreseeable, deportable aliens may not be indefinitely detained without a government showing of a 'strong special justification,' constituting more than a threat to the community, that overbalances the alien's liberty interest." *Id.*

In this regard, the court determined "that incarceration for one and one-half years as part of a civil, non-punitive proceeding when there was no chance of actual, final removal, was unreasonable." *Id.* at 271.  In such situations, "courts must examine the facts of each case to determine whether there has been unreasonable delay in concluding removal proceedings." *Id.*

Although petitioner was incarcerated for slightly over two years before the BIA issued the final order of removal, the court does not find his pre-removal detention unreasonable. Petitioner had been in federal custody for approximately seven months when the IJ issued the order of removal on November 27, 2006.  At that time, petitioner, through his counsel, commenced an appellate process with the BIA.  Petitioner had been in custody for approximately 13 months when the BIA remanded his case back to the IJ in May 2007.  Petitioner received another merits hearing in October 2007, which he appealed.  The BIA affirmed the IJ's decision in March 2008 and denied reconsideration of the decision in May 2008. Unlike *Ly*, which involved a Vietnamese citizen who could not be removed to his native country, there is no evidence that the government is prevented from removing petitioner to the DRC.  In addition, when petitioner filed this habeas action in January 2007, he had been in federal custody approximately nine months.  This detention was much

shorter - only about one-half - of the 18-month period that the court found to be unreasonable in *Ly*.

Furthermore, petitioner is not entitled to relief simply because it took more than 18 months for the government to enter a final order of removal.  Based on this record, it does not appear to the court that the government's proceedings were unreasonably lengthy or that the government unnecessarily delayed the determination to remove petitioner.  On April 19, 2006, the government served petitioner with a Form 1-286 Notice of Custody Determination, which detained him in government custody pending removal proceedings.  Rosario Shoudy Affidavit at ¶ 7 (docket no. 6-4).  On May 4th, petitioner requested a continuance to obtain an attorney.  *Id.* at ¶ 9.  Petitioner attended a bond hearing and master calendar hearing on May 24th.  *Id.* at ¶ 10; IJ Order (May 24, 2006) (docket no. 8-4).  At that time, the IJ denied a change in custody because petitioner was subject to mandatory detention.  *Id.*  Petitioner reserved the right to appeal the bond decision until June 23rd but did not file an appeal.  *Id.*  At the master calendar hearing, his counsel requested a deferral of removal under Article 3 of the Convention Against Torture. Shoudy Aff. at ¶ 10.  This request resulted in a continuance until June 28th for petitioner to file his applications for relief.  *Id*.  A merits hearing scheduled for August 30th was continued due to insufficient court time for completion.  *Id.*  The hearing was rescheduled for October 25, 2006 when the testimony was completed.  *Id.* The case was continued until the IJ issued the decision on November 27th, which denied petitioner's application for relief and ordered him removed.  *Id.*[2]

---

[2] The court record does not include a complete transcript of the administrative proceedings.  However, it appears from other documents that the IJ's opinion was rather lengthy, consisting of at least 41 pages.  *See* BIA Opinion (May 18, 2007).  Given the length of this opinion, the IJ's one month continuance taken to issue the opinion appears reasonable.

Petitioner filed a notice of appeal with the BIA on December 22nd. *Id.* at ¶ 11. The BIA issued a briefing schedule which required the briefs to be due on March 6, 2007. *Id.* The BIA entered its decision on May 18, 2007, approximately two and one-half months after the parties briefed the appeal.  As previously discussed, the BIA decision rejected two of petitioner's arguments, but remanded the matter to the IJ for a ruling on petitioner's asylum status.  On remand, the IJ conducted another hearing and denied petitioner's request for an adjustment of status in an order entered October 31, 2007.  IJ Order (October 31, 2007) (docket no. 37-2).  The BIA denied petitioner's appeal of this order on March 25, 2008, and then denied his motions for reconsideration and to reopen the proceedings on May 21, 2008.  Based on this record, it does not appear to the court that the proceedings were either unreasonably lengthy or that the government unnecessarily delayed the removal.

Finally, it appears to the court that petitioner has extended his detention by filing meritless appeals of the removal.  Appeals and petitions for relief are to be expected as a natural part of the removal process.  *See Ly*, 351 F.3d at 272.  Under the circumstances of this case, however, the court views petitioner's meritless appeals as essentially dilatory tactics to delay his removal.  As the court observed in *Ly*:

> Under the rule we adopt today, courts must be sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration. Without consideration of the role of the alien in the delay, we would encourage deportable criminal aliens to raise frivolous objections and string out the proceedings in the hopes that a federal court will find the delay "unreasonable" and order their release.

*Id.*

7

It is true that petitioner succeeded in obtaining a remand from the BIA in May 2007. However, petitioner did not prevail at his second hearing before the IJ.  On the appeal after remand, the BIA observed that there was no evidence that petitioner's wife and children would be required to return to the DRC upon his removal from the United States.  BIA Decision March 25, 2008.  On the contrary, petitioner's wife and children became permanent residents before the IJ ordered petitioner's remand on October 31, 2007.  *Id.*  In addition, there was no evidence that petitioner's medical concerns would go untreated in the DRC or that DRC government officials would target him. *Id.* Furthermore, both the IJ and the BIA noted petitioner's lack of candor concerning the circumstances of his criminal conviction.  *Id.*  Despite the evidence that petitioner had sexual contact with a minor in various hotel rooms on several occasions and attempted to take the minor across state lines, petitioner failed "to provide a forthright and consistent account of the details leading to his conviction," which tended to undermine any claim of remorse or rehabilitation.  *Id.*  The relative weakness of petitioner's case is demonstrated by the Sixth Circuit's denial of stay of removal pending appeal and finding that petitioner's appeal had "little likelihood of success on review." Order (Aug. 6, 2008).  For these reasons, the court concludes that petitioner has failed to present a basis for habeas relief with respect to his pre-removal detention.

### 2.    Post-removal detention

In addition, respondent contends that the petition is moot because he is no longer being held pursuant to the pre-removal detention statute, 8 U.S.C. § 1226(c).  Rather, since the entry of the final order of removal on May 21, 2008, petitioner has been held under the post-removal detention statute, 8 U.S.C. § 1231(a)(6).  Sections 1231(a)(1)(A) and (a)(1)(B)(i) provide in pertinent part that the Attorney General shall remove an alien from the United States within a period

of 90 days from the date the order of removal becomes administratively final.  However, an exception to this rule appears in § 1231(a)(6), which provides in pertinent part that, "[a]n alien ordered removed who is . . . removable under section . . . 1227(a)(2) . . . may be detained beyond the removal period."  Here, petitioner may be detained beyond the 90-day removal period because he was ordered removed pursuant to § 1227(a)(2)(A)(iii) for committing an aggravated felony after his admission to the United States.

The Supreme Court has held that the indefinite detention of a removable criminal alien after a removal proceeding would violate a due process right under the Fifth Amendment.  *See Zadvydas v. Davis*, 533 U.S. 678, 682, 690 (2001).  In reaching this determination, the Supreme Court concluded that a six month post-removal detention was reasonable, and that after that time "the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'" *Clark v. Martinez*, 543 U.S. 371, 377-378 (2005), *citing Zadvydas*, 533 U.S.  at 701.   *Zadvydas* "stands for the proposition that detaining an alien requires more than the rationality of a general detention statute; any justification must go to the alien himself." *Demore v. Kim*, 538 U.S. 510, 552-553 (2003).  After six months, "the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'" *Clark*, 543 U.S. at 377-378, *citing Zadvydas*, 533 U.S.  at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in

confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas,* 533 U.S. at 701.

In this case, Mr. Kapiamba's petition for habeas relief which is premised on a purportedly unreasonably lengthy post-removal detention, fails for two reasons. First, his petition is premature, because he has not exceeded the presumptively reasonable six-month period of post-removal detention established in *Zadvydas*. Second, and more importantly, Mr. Kapiamba has failed to demonstrate that there is "no significant likelihood of removal in the reasonably foreseeable future." On the contrary, this proceeding is the only thing keeping Mr. Kapiamba in this country. Accordingly, the petition should be denied.

### C.    Order staying petitioner's removal or deportation

Finally, in their status reports, respondents take the position that the January 17, 2007 order staying petitioner's removal terminated upon transfer of the case from the Eastern District to the Western District. The Court disagrees. "[W]hen an action is transferred, it remains what it was; all further proceedings in it are merely referred to another tribunal, leaving untouched whatever has been already done." *Magnetic Engineering & Mfg. Co. v. Dings Mfg. Co.*, 178 F.2d 866, 868 (2nd Cir. 1950). However, in light of the Sixth Circuit's order denying petitioner's request for a stay of removal and finding that his appeal had little likelihood of success, the court concludes that there is no reason to continue to stay his removal or deportation. Under current law, an alien's removal does not moot a pending appeal. *Kapiamba,* No. 08-3499 (Order, Oct. 17, 2008). Accordingly, the January 17, 2007 stay should be lifted.

### III.    Recommendation

Accordingly, I respectfully recommend that the stay of removal or deportation entered  January 17, 2007 be **LIFTED** and that the petition be **DENIED**.


Dated:  October 24, 2008                          /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).